# In re Cecilia RIVERA-Claros, Respondent

### File A73 089 446 - Arlington

*Decided October 3, 1996*

### U.S. Department of Justice
### Executive Office for Immigration Review
### Board of Immigration Appeals

An alien seeking to reopen in absentia proceedings based on her unsuccessful communications with her attorney did not establish exceptional circumstances pursuant to section 242B(c)(3)(A) of the Immigration and Nationality Act, 8 U.S.C. § 1252b(c)(3)(A) (1994), where she failed to satisfy all of the requirements for an ineffective assistance of counsel claim set out in *Matter of Lozada*, 19 I&N Dec. 637 (BIA 1988), *aff'd*, 857 F.2d 10 (1st Cir. 1988).

FOR RESPONDENT: Douglas Schoppert, Esquire, Falls Church, Virginia

FOR THE IMMIGRATION AND NATURALIZATION SERVICE: David M. Dixon, Chief Appellate Counsel

BEFORE: Board En Banc: DUNNE, Vice Chairman; VACCA, HEILMAN, HOLMES, HURWITZ, FILPPU, COLE, and MATHON, Board Members. Dissenting Opinion: SCHMIDT, Chairman, joined by VILLAGELIU, ROSENBERG, and GUENDELSBERGER, Board Members.

FILPPU, Board Member:

The respondent has timely appealed an Immigration Judge's decision denying the respondent's motion to reopen her deportation proceedings, which had been conducted in absentia. The appeal will be dismissed.

## I. PROCEDURAL HISTORY

On October 6, 1994, the respondent appeared at a deportation hearing in Los Fresnos, Texas. At that hearing, the respondent, through Texas counsel, conceded deportability and filed an application for asylum. The respondent also requested a change of venue to Arlington, Virginia, which the Immigration Judge granted. The motion for a change of venue states that it was accompanied by a notice of appearance (Form EOIR-28) and identified an attorney licensed by and practicing in a jurisdiction in the metropolitan Washington, D.C., area who would be assuming representation of the

respondent ("former counsel"). The respondent's Texas counsel was also permitted to withdraw at that time.

On October 13, 1994, a notice of a January 10, 1995, hearing was sent by the Immigration Court in Arlington, Virginia, to former counsel. Neither the respondent nor her former counsel appeared at the January 10, 1995, hearing, and, accordingly, the Immigration Judge issued a decision in absentia.

The respondent, through new and current counsel, filed a motion to reopen on January 18, 1995. That motion was denied by an Immigration Judge during a hearing on April 11, 1995. A written decision of the April 11, 1995, ruling was issued, with some modifications, on June 19, 1995.

The respondent timely appealed the Immigration Judge's April 11, 1995, decision. On October 11, 1995, the respondent, after having received a "bag and baggage" notice of deportation for October 13, 1995, requested an emergency stay of deportation from this Board pending a decision on the instant appeal. In an October 12, 1995, order, this Board granted the respondent's emergency stay request. In *Matter of Rivera*, 21 I&N Dec. 232 (BIA 1996), this Board vacated the October 12, 1995, order and held that the automatic stay of deportation associated with the filing of a motion to reopen an in absentia hearing pursuant to section 242B(c)(3) of the Immigration and Nationality Act, 8 U.S.C. § 1252b(c)(3) (1994), continues during the pendency of an appeal from the denial of such a motion.

## II. UNDERLYING APPEAL

We now consider the respondent's underlying appeal. A deportation order issued following proceedings conducted in absentia pursuant to section 242B(c) of the Act may be rescinded only upon a motion to reopen which demonstrates that the alien failed to appear because of exceptional circumstances, because she did not receive proper notice of the hearing, or because she was in Federal or State custody and failed to appear through no fault of her own. Section 242B(c)(3) of the Act. *See Matter of Gonzalez-Lopez*, 20 I&N Dec. 644 (BIA 1993). The term "exceptional circumstances" refers to exceptional circumstances beyond the control of the alien, such as serious illness of the alien or death of an immediate relative, but not including less compelling circumstances. Section 242B(f)(2) of the Act.

The respondent, through new counsel, contended in her motion to reopen that she had never received notice of the January 10, 1995, hearing. She stated that, although former counsel reportedly sent her a letter on November 3, 1994, informing her of the January 10, 1995, hearing, the respondent never received that letter and was thus unaware of the January 10, 1995, hearing.

The motion to reopen was accompanied by a declaration from the respondent. In this declaration, the respondent recounts her numerous unsuccessful attempts to speak with former counsel after she arrived in Maryland from Texas. She states that she believes she did not receive her former counsel's

letter due to either postal error or an error of inadvertence by former counsel. The respondent states that she does not intend to file a complaint against former counsel.

An affidavit from former counsel also accompanied the respondent's motion to reopen. In the affidavit, former counsel states that a letter was sent to the respondent advising her of the hearing date and also informing her that the attorney would not be able to represent her on January 10, 1995, due to a heavy caseload and a shortage of time. We note that it does not appear from the record that former counsel informed the Immigration Court in Arlington, Virginia, of an intention to formally withdraw as the respondent's counsel. Indeed, the Immigration Judge, in her June 19, 1995, written decision, states that "[t]here has been no excuse shown for the absence of counsel of record from the hearing."

Former counsel further states in the affidavit that it was not until January 12, 1995, that it was discovered in a conversation with the respondent that she had never received the letter that former counsel had sent to her on November 3, 1994. The attorney states that, at that time, the respondent confirmed that the address to which former counsel had mailed the November 3, 1994, letter was the respondent's correct address.

The respondent further argued in her motion to reopen that, because of her inability to communicate with her former counsel and because of her nonreceipt of the November 3, 1994, letter, her failure to appear at the January 10, 1995, hearing was due to exceptional circumstances beyond her control.

On appeal, the respondent argues that the Immigration Judge erred in concluding that the respondent had been properly served with the notice of hearing because there was no showing that personal service on either the respondent or her counsel was not practicable. The respondent also contends that the Immigration Judge erred in finding that the failure of the respondent's former counsel to adequately communicate the date of the hearing to her did not constitute exceptional circumstances beyond her control. The respondent argues that, given the evidence showing her interest in having her case prosecuted, it is unreasonable to conclude that she would ignore a letter advising her of a hearing on the matter.

## III. CONCLUSIONS

### A. Proper Notice

We first address the respondent's contention that she had not been properly served with the notice of hearing because there was no showing that personal service on either the respondent or her counsel was not practicable. This claim is raised only in the attachment to the respondent's notice of appeal and is not further developed in her brief.

According to 8 C.F.R. § 292.5(a) (1996), whenever a person in immigration proceedings is required to be given notice, such notice will be given to the attorney or representative of record, if the person is represented. *See* sections 242B(a)(2), (c)(1) of the Act. The record reflects that notice of the January 10, 1995, hearing was sent to the respondent's former counsel by certified mail, return receipt requested, on October 13, 1994. A return receipt, signed by someone at former counsel's address, is also included in the record. Former counsel has also attested to receiving notice of the January 10, 1995, hearing. Thus, service of the notice of hearing on former counsel was service in accordance with sections 242B(a)(2) and (c)(1) of the Act and with 8 C.F.R. § 292.5(a). *See Matter of Grijalva*, 21 I&N Dec. 27 (BIA 1995) (hereinafter *Grijalva* 1995).

Further, we note that in *Grijalva* 1995, *supra*, this Board held that, pursuant to section 242B(a)(2)(A) of the Act, neither the Executive Office for Immigration Review nor the Immigration Court is required to show that "in person" service was not "practicable" before permitting service of the notice of hearing by certified mail. *Id*. at 36. We therefore disagree with the respondent's contention concerning service of the notice of the hearing.

We will not now, however, consider whether there may be circumstances where counsel's performance is so inadequate that notice to the attorney under 8 C.F.R. § 292.5(a) should not be deemed to be notice to the alien. This question has not been raised by the respondent nor briefed by the parties.

## B. Exceptional Circumstances and *Lozada*

We next address the respondent's contention that her alleged inability to communicate with her former counsel combined with her alleged nonreceipt of the November 3, 1994, letter constituted exceptional circumstances beyond her control.

This Board, in another decision bearing the name *Matter of Grijalva,* 21 I&N Dec. 472 (BIA 1996) (hereinafter *Grijalva* 1996), recently held that an alien alleging ineffective assistance of counsel who satisfied the requirements set out by this Board in *Matter of Lozada*, 19 I&N Dec. 637 (BIA 1988), *aff'd*, 857 F.2d 10 (1st Cir. 1988), had established exceptional circumstances for purposes of section 242B(c)(3) of the Act. In *Grijalva* 1996, the respondent alleged that, on the morning of the scheduled hearing date, an employee of his former counsel called the respondent and erroneously informed him that a continuance had been granted and that he should not appear at the Immigration Court. The Board found "the level of incompetence involved in this case establishes that the respondent's absence was the result of exceptional circumstances within the meaning of section 242B(f)(2) of the Act." *Id*. at 4.

In *Matter of Lozada, supra*, we held that claims alleging ineffective assistance of counsel require

(1) that the motion to reopen be supported by an affidavit of the allegedly aggrieved respondent setting forth in detail the agreement that was entered into with counsel with respect to the actions to be taken and what representations counsel did or did not make to the respondent in this regard;

(2) that counsel whose integrity or competence is being impugned be informed of the allegations leveled against him or her and be given an opportunity to respond and;

(3) that the motion reflect whether a complaint has been filed with appropriate disciplinary authorities with respect to any violation of counsel's ethical or legal responsibilities, and if not, why not.

We determined that the above three requirements for allegations of ineffective assistance of counsel are necessary in order to have a basis for assessing the substantial number of such claims which come before the Board.[1]

The United States Court of Appeals for the Fourth Circuit, the circuit within which this case arises, disagreed with our application of the *Lozada* "bar complaint" requirement in the context of a case involving an adolescent alien where the court found no reason to disbelieve the claim of attorney incompetence and did not see how the filing of such a complaint would aid in the disposition of the immigration aspects of the case. *Figeroa v. United States INS,* 886 F.2d 76 (4th Cir. 1989). It is not clear whether the Fourth Circuit fully understood the basis for our *Lozada* requirements, as *Lozada* itself is not mentioned in *Figeroa*. Moreover, the respondent's case is distinguishable, as explained later.

In the instant case, we note that the respondent appears to have fulfilled the second of the *Lozada* requirements. While it is questionable whether she has met the first requirement, we find that the respondent has not complied with the third requirement, that of filing a complaint against former counsel or *adequately* explaining why a complaint against former counsel has not been filed with the appropriate disciplinary authorities. In the declaration accompanying her motion to reopen, the respondent asserts that she does not wish to file a complaint against former counsel. The respondent, in her declaration, states that "if any error was made in this case it was a postal error or an error of inadvertence by [former counsel]." As explained below, we find this to be an inadequate explanation under *Lozada*.

The governing regulations allow any attorney who is a member in good standing of the bar of the highest court of any State, possession, territory, Commonwealth, or the District of Columbia to practice before Immigration Judges and the Board. *See* 8 C.F.R. §§ 1.1(f), 292.1(a)(1) (1996). Regulations do exist for the disciplining of attorneys appearing before Immigration

---

[1] We note that in *Grijalva* 1996, *supra*, this Board stated that an alien is not required to show prejudice in order to rescind an order of deportation entered following a hearing conducted in absentia under section 242B(c)(3) of the Act. *See Grijalva* 1996, *supra*, at 3 n.2. The statute does not require a showing of prejudice to obtain relief from an in absentia order. Thus, the "prejudice" component of our *Lozada* rule has not been extended to this context.

Judges. *See* 8 C.F.R. § 292.3 (1996). But those regulations, in their current form, are not intended to be a comprehensive set of rules governing the practice of law in the immigration field and, indeed, are not as broad as the American Bar Association's Model Rules of Professional Conduct (1995), for example. Moreover, there is no expeditious way for this Board to deal with the more routine attorney-related problems that periodically arise. Instead, for attorneys who may practice before us simply by virtue of their admission into a state bar or the bar of another recognized jurisdiction, we rely on the disciplinary process of the relevant jurisdiction's bar as the first, and ordinarily the fastest, means of identifying and correcting possible misconduct.

In this way, this Board's interest in having a method of monitoring those attorneys who practice before us is addressed. However, this process, as set out in *Matter of Lozada, supra*, also necessitates the cooperation of the party alleging ineffective assistance of counsel. As we stated in *Matter of Lozada,* this process not only serves to deter meritless claims of ineffective assistance of counsel but also highlights the standards which should be expected of attorneys who represent aliens in immigration proceedings. *Id*. at 639. It also serves to protect against collusion between alien and counsel in which "ineffective" assistance is tolerated, and goes unchallenged by an alien before disciplinary authorities, because it results in a benefit to the alien in that delay can be a desired end, in itself, in immigration proceedings. *See INS v. Rios-Pineda*, 471 U.S. 444 (1985); *Reid v. INS*, 766 F.2d 113 (3d Cir. 1985); *Cheng Fan Kwok v. INS*, 381 F.2d 542 (3d Cir. 1967), *aff'd*, 392 U.S. 206 (1968).

When adjudicating an ineffective assistance of counsel claim, this Board relies to a great extent on the documents submitted in support of that claim, such as affidavits and declarations. An evidentiary hearing before an Immigration Judge focusing on the prior attorney-client relationship and on the specifics of prior counsel's behavior cannot always be avoided. Nevertheless, such hearings are an added burden on both the parties and the Immigration Court, and they rarely assist in resolving the merits of the substantive immigration law issues presented by a particular case. Consequently, we prefer to make final determinations of ineffective assistance of counsel claims on the documentary submissions alone, where possible.

We also recognize that affidavits prepared by litigants may not always present a full picture of the circumstances bearing on issues raised by the affidavits. In addition, the Immigration and Naturalization Service will frequently lack independent information regarding the details of an attorney-client relationship, which can involve privileged communications. In this context, the *Lozada* requirements substantially reduce the pressure for routinely requiring a hearing to test the reliability of the affidavits. The filing of a complaint with the attorney's licensing body serves to increase our confidence in the strength of the claim being made. By greatly lessening the chances of collusion and of meritless claims being brought forward for the

purposes of delay, the *Lozada* requirements more readily enable us to act on such motions without routinely requiring evidentiary hearings on matters, such as counsel's performance, that are collateral to the merits of substantive immigration law determinations.

In the context of the instant case, we recognize that the existence of problems in communication between an attorney and a client, as a question of past fact, is not dependent on the filing of a complaint with a state bar or a bar from another recognized jurisdiction. It is thus possible to resolve the ineffective assistance of counsel claim either on the documentary submissions or after an evidentiary hearing, without requiring the filing of a bar complaint. However, the same is true of any ineffective assistance of counsel claim, as the Fourth Circuit's decision in *Figeroa* indicates. *Figeroa v. United States INS, supra*, at 79. Thus, while this Board, under various circumstances, accepts showings of ineffective assistance of counsel as due process violations that permit aliens to obtain new hearings, in no situation will the filing of a bar complaint change the past events that are alleged to amount to ineffective assistance of counsel.

The requirement of a bar complaint, however, serves important purposes in such cases. First, it increases our confidence in the validity of the particular claim. Second, it reduces the likelihood that an evidentiary hearing will be needed. Third, it serves our long-term interests in policing the immigration bar. And, fourth the requirement of filing a complaint, or adequately explaining why such a complaint has not been filed, protects against possible collusion between counsel and the alien client. Moreover, we consider the filing of such a complaint, or reasonably explaining why such was not done, to be a relatively small inconvenience for an alien who asks that he or she be given a new hearing in a system that is already stretched in terms of its adjudicatory resources. We also note that our *Lozada* rule can no longer be considered new. It has been in existence for over 8 years, well before the events giving rise to this case.[2]

---

[2] The dissent does not argue that we should overrule *Lozada*. Nor does it contend that an ineffective assistance of counsel claim must be assessed outside the statutory structure of section 242B in cases where the claim relates to an in absentia order. Instead, it would find ineffective assistance of counsel without the need for a bar complaint. It thus seems that the dissent would make the filing of such a complaint contingent on the degree of the *evidence* of collusion and effectiveness of former counsel that is presented in each case.

The application of *Lozada* on the selective, special-case basis implied by the dissent is undesirable.Such an approach would provide little guidance to the public as to when the filing of a bar complaint was deemed critical to the success of a motion based on alleged ineffective assistance of counsel. This uncertainty would extend to our adjudication process and would likely increase the number of submissions required in those cases where the filing of the bar complaint was ultimately deemed critical. Moreover, clear evidence of collusion is almost by definition difficult to come by. The requirements in *Lozada* in part arise from the view that an alien's unexplained reluctance to pursue disciplinary action, while simultaneously arguing that

## C.  The Application of *Lozada* to This Case

The respondent, perhaps aware of our requirement in *Matter of Lozada, supra,* states in her declaration that she does not intend to file a complaint against her former counsel.  The respondent states that "if any error was made in this case it was a postal error or an error of inadvertence by [former counsel]."  However, we consider the respondent's explanation for not filing a complaint against former counsel to be inadequate and to minimize significantly the questions raised by the attorney's apparent conduct.

For example, former counsel states in the attached affidavit that a signed but blank notice of appearance, Form EOIR-28, was sent to Texas counsel.  This at least leaves open the possibility that her former counsel was unaware of the respondent's actual identity at the time the change of venue motion was filed in Texas.  That motion for a change of venue, however, states in paragraph 4, that "Respondent has retained the services of [former counsel] . . . , whose E[OIR]-28 is being filed, to represent her . . . ."[3] The record raises questions as to the nature of the attorney-client relationship involved here.

Most importantly, the respondent's former counsel, based on the evidence of record, apparently failed  (1) to ensure that the respondent received notice of her hearing; (2) to confirm whether the respondent had been able to secure new counsel and, if not, to move for a continuance to enable the respondent to obtain new counsel; (3) to move the Immigration Court for withdrawal; and 4) to show up at the hearing absent permission to withdraw.

The manner in which former counsel assumed and executed representation of the respondent seems to reflect on the seriousness of the attorney's commitment to represent the respondent. The record before us is equally consistent with there being some impropriety committed upon the Immigration Court, with or without the respondent's knowledge, as it is with a host of other scenarios, including innocent but perhaps negligent behavior by a busy attorney.

The record also raises some questions as to the respondent's understanding of what may have been transpiring.  We note that former counsel's affidavit states that, along with the November 3, 1994, letter, the respondent was

counsel's representation was so inadequate as to warrant reopening of immigration proceedings, in itself raises questions regarding the issue of collusion.

 In addition, the dissent's approach would also eliminate the collateral benefits of *Lozada* in terms of correcting inappropriate or unethical professional conduct, except in those cases where we could discern likely collusion or other grounds for denial.  But if collusion could be detected from the record in a particular case, it is unclear how the filing of a bar complaint would help an alien obtain reopening in any event.  In cases of obvious collusion, moreover, the likelihood of a bar complaint actually being filed would appear to be reduced, if for no other reason than continued efforts at concealment of the collusion.

   [3] We note that this notice of appearance, Form EOIR-28, is not actually contained in the record.  It is not clear whether the Form EOIR-28 appearance form has been misplaced or simply was not attached to the change of venue motion.

sent a list of attorneys who might be able to represent her. We also note that the respondent, in paragraph 6 of her declaration, refers to having received a list of attorneys. However, it is unclear when or how the respondent, who alleges she did not receive her former counsel's November 3, 1994, letter, received the list of attorneys. It is cases such as this, where we are unable to discern clearly what has occurred and the culpability, if any, that stems from such conduct, which reinforce the need for the process we set out in *Matter of Lozada, supra*.[4]

It may well be true that an inability to communicate with former counsel combined with nonreceipt of the November 3, 1994, letter might constitute exceptional circumstances beyond the respondent's control. However, absent the respondent's full compliance with the *Lozada* requirements, the degree of confidence we have in her individual claim is lessened to the point where we decline to grant the motion. The unanswered questions regarding the attorney-client relationship and the respondent's understanding of her responsibilities distinguish this from *Figeroa v. United States INS, supra.*

In addition, absent compliance with *Lozada*, the value of the bar complaint as a tool evidencing a lack of collusion and preventing future episodes of this sort is completely eliminated, and it is unclear whether the Fourth Circuit understood the multiple purposes behind our *Lozada* rule at the time of its decision in *Figeroa.*

We thus conclude that the respondent, who has failed to satisfy all of the requirements for an ineffective assistance of counsel claim set out in *Matter of Lozada, supra*, has not satisfactorily established a case for reopening under the exceptional circumstances provision of section 242B(c)(3)(A) of the Act.[5]

---

[4] We do not share the dissent's view that there is "no hint of collusion" in this case. We do not see evidence from which a finding of collusion can be made. But there are inadequately answered questions, especially in relation to the role former counsel was expected to play in the overall handling of the respondent's case. Circumstances that remain unexplained are the respondent's receipt of the list of other attorneys, the exact nature of the "attorney-client" relationship that existed between the respondent and her former counsel, and the respondent's understanding, as the result of her relationship with Texas counsel, of what actually could be expected of former counsel in relation to the representation of the respondent in the Arlington, Virginia, Immigration Court. Moreover, none of these concerns are in any way dispelled by the respondent's seeming tolerance of former counsel's conduct, which is reflected in the inadequate explanation for the failure to file a complaint with disciplinary authorities. Former counsel's conduct, as characterized by the respondent, cannot simply be explained away by postal error or "inadvertence."

[5] We note that the respondent's motion met the 180-day time limit for "exceptional circumstances" motions imposed by section 242B(c)(3)(A) of the Act. We need not now address whether the respondent may satisfy the remainder of the statutory requirements by virtue of information submitted outside the 180-day period. In other words, our ruling does not foreclose the respondent's filing of a supplemental motion that satisfies all the requirements of *Matter of Lozada, supra*. However, we caution that any such motion filed by the respondent must comply with the requirements for motions filed at the Board. *See* 61 Fed. Reg. 18,900-10

Accordingly, the appeal will be dismissed.

**ORDER:** The appeal is dismissed.

*DISSENTING OPINION*: Paul W. Schmidt, Chairman, in which Gustavo D. Villageliu, Lory D. Rosenberg, and John W. Guendelsberger, Board Members, joined.

I respectfully dissent.

The moving papers establish that the respondent made reasonable efforts to contact her former attorney, including at least 10 phone calls and an unsuccessful office visit. Her former attorney acknowledges in an affidavit that counsel was aware that the respondent was trying to reach her by phone and in person concerning the Immigration Court date.

Notwithstanding this knowledge, the respondent's former counsel used regular mail, as opposed to registered mail, a messenger, or courier service, to send the respondent's hearing notice. Further, former counsel did not personally follow up by telephone to ensure that the critically important notice of hearing date was received by the respondent.

In *Matter of Grijalva*, 21 I&N Dec. 472 (BIA 1996), we recently found that ineffective assistance of counsel constituted an "exceptional circumstance" justifying reopening of deportation proceedings under section 242B of the Immigration and Nationality Act, 8 U.S.C. § 1252b (1994). The primary difference between this case and *Grijalva* is that the respondent in *Grijalva* filed a complaint with the state bar association in accordance with our decision in *Matter of Lozada*, 19 I&N Dec. 637 (BIA 1988), *aff'd*, 857 F.2d 10 (1st Cir. 1988).

However, I do not need a *Lozada* motion or a state bar complaint to find that ineffective assistance has occurred here. The respondent's affidavit and that of former counsel are sufficient to establish that former counsel's duties to the respondent were not properly discharged. There is no hint of collusion between former counsel and the respondent. Under these circumstances, I see no basis for making the filing of a state bar complaint the determinative factor as to whether exceptional circumstances beyond the control of the alien have been established.

I agree with my colleagues in the majority that, in many instances, the *Lozada* requirements serve to expedite and facilitate the process for adjudicating claims of ineffective assistance of counsel. However, in this particular case, I do not find that the filing of a state bar complaint will contribute materially to resolving either the factual or the legal issues in the respondent's case.

---

(1996) (to be codified at 8 C.F.R. pts. 1, 3, 103, 208, 212, 242, 246). We also express no view on whether such a supplemental submission may succeed as either an "exceptional circumstances" claim under section 242B(c)(3)(A) or a "lack of notice" claim under section 242B(c)(3)(B).

I had read *Lozada* as setting forth a practical rule that did not eliminate our overall discretion to grant a motion to reopen when the circumstances and fairness required it. I now understand the majority to state that *Lozada* is a prerequisite in every case raising ineffective assistance of counsel as an issue. The majority's absolute rule goes too far.

I also share the majority's concern with substandard practice by attorneys appearing before the Executive Office for Immigration Review ("EOIR"). I regret that the current regulations, set forth at 8 C.F.R. § 292.3 (1996), have proved largely ineffective to deal with lapses in professionalism. I also trust that the disciplinary regulations will be revised in the future to overcome those shortcomings. Nevertheless, I question the wisdom and the fairness of making the respondent in this case bear the major brunt of enforcing professional practice standards before EOIR. *See Figeroa v. United States INS,* 886 F.2d 76, 79 (4th Cir. 1989) (questioning the requirement that an alien file a bar complaint to raise ineffective assistance of counsel before this Board).

In summary, the respondent has satisfactorily established that her former counsel failed to give her notice of the time and place of her hearing, notwithstanding the respondent's persistent attempts to get such information from former counsel. The breakdown in attorney-client communications, alluded to by the majority, was on the side of the attorney. Under these circumstances, the respondent's failure to appear was due to exceptional circumstances beyond her control. *Cf. Matter of Grijalva, supra.* Therefore, I respectfully dissent from the decision to dismiss the respondent's appeal.